In the Matter of the Estate of MARY SADOWSKI, Deceased.
JOSEPH SADOWSKI, Appellant; MARYAN RZEZNIK and Another,
Executors, etc., of MARY SADOWSKI, Deceased, Respondents.

Fourth Department, December 23, 1935.

*Joseph S. Kaszubowski* [*Elijah W. Holt* of counsel], for the appellant.

*Stanley Chmiell* [*William B. Mahoney* of counsel], for the respondents.

LEWIS, J. We review a surrogate's decree which denies the right of election by a surviving husband to an " intestate share " in his wife's estate under section 18 of the Decedent Estate Law (added by Laws of 1929, chap. 229, § 4, as amd. by Laws of 1930, chap. 174, § 1, and Laws of 1931, chap. 562, § 1).

The decedent, Mary Sadowski, and the appellant were married February 2, 1921, and lived together until May 3, 1922, when a separation occurred. Following her death in 1932 — without reconciliation with the appellant — and upon the probate of her

will dated October 27, 1932, which disinherited him, the appellant filed a petition to establish his right by election to share in her estate. At hearings before the surrogate which followed, proof was given bearing upon the question whether the appellant was qualified to take an " intestate share " of the decedent's estate within the requirements of section 18 of the Decedent Estate Law. The statute provides in part:

" § 18.   Election by surviving spouse against or in absence of testamentary provision.  1. Where a testator dies after August thirty-first, nineteen hundred and thirty, and leaves a will thereafter executed and leaves surviving a husband or wife, a personal right of election is given to the surviving spouse to take his or her share of the estate as in intestacy, subject to the limitations, conditions and exceptions contained in this section.

" (a) In exercising the right of election herein granted a surviving spouse shall in no event be entitled to take more than one-half of the net estate of the decedent, after the deduction of debts, administratration expenses and any estate tax, and the words ' intestate share ' wherever used in this section shall in no event be   construed   to   mean   more   than   one-half   of   such   net estate.   *   *   *

" 4. *No husband who has neglected or refused to provide for his wife, or has abandoned her, shall have the right of such an election.*"

The executors of the decedent's estate, who are respondents before us, claim the evidence before the surrogate established that the appellant abandoned his wife in 1922 and that thereafter he refused to provide for her, thereby depriving himself of the benefits of the statute quoted above.

We have examined the record and conclude that the weight of evidence favors the surrogate's findings of fact that when the petitioner and the decedent separated, the appellant did not leave their home voluntarily but at the express request of the decedent; that thereafter he attempted a reconciliation but his overtures were futile; that the deceased wife owned the home and was possessed of ample means; that from the date of appellant's departure from the home of his wife, he never corresponded with her or contributed to her support; that there is no direct, conclusive evidence that the appellant ever refused to provide for the decedent or that he abandoned her.

Upon such findings, however, the surrogate draws the conclusion: " I am constrained by the use of the word ' neglect ' in subdivision 4, section 18 of the Decedent Estate Law to find that said surviving spouse is not entitled to a right of election to take against the provisions of said will." The appellant challenges the legality of that conclusion.

The question is thus presented whether a surviving husband has " neglected " his wife, within the contemplation of section 18, subdivision 4, of the Decedent Estate Law, when it appears that he did not abandon her but left her home involuntarily at her request; that subsequent overtures on his part to effect a reconciliation were futile and that there is a failure of proof that he refused to provide for her.   What was the intent or purpose of the Legislature as expressed by the language employed in section 18, subdivision 4, of the Decedent Estate Law?

As an aid to construing the intent of the statute, we may have recourse to the proceedings of the Legislature which led to its enactment.   (*Woollcott* v. *Shubert*, 217 N. Y. 212, 221; *Consolidated Laundries Corp.* v. *Roth*, 241 App. Div. 48, 50; *Lapina* v. *Williams*, 232 U. S. 78, 90.)

In 1927 the Legislature appointed a Commission " to investigate and recommend as to the advisability of a revision of the Real Property Law, the Personal Property Law, the Decedent Estate Law and the other statutes of this state as the Commission may deem advisable for the purpose of modernizing and simplifying the law relating to estates and the systems of descent and distribution of property, the advisability of establishing a unified system for the devolution of real and personal property, and to prepare proposed legislation for such purposes " (Laws of 1927, chap. 519).   A Commission thus appointed recommended changes in the substantive law of estates, with such new procedure as the changes in substance made necessary.   (Legis. Doc. 1928, No. 70; Id. 1929, No. 62; Id. 1930, No. 69.)   By its first supplemental report to the Legislature of 1929, the Commission recommended a general revision of the Decedent Estate Law which was later accomplished by the enactment of chapter 229 of the Laws of 1929, effective September 1, 1930.

As a part of the revision thus proposed a new section of statute was recommended — which later was enacted as section 18 of the Decedent Estate Law — giving to a surviving husband or wife the right of election to take against the will of his or her deceased spouse, subject, however, to certain stated limitations.   These limitations include the condition — which is pertinent to this proceeding — that " No husband who has neglected or refused to provide for his wife, or has abandoned her, shall have the right of such an election."

In support of its recommendation of this condition the Commission's report to the Legislature carried the following written comment or note: " Such an abandonment or refusal or neglect to provide, *is intended*, as our courts uphold as sufficient to sustain a

judgment of separation under section 1161 of the Civil Practice Act." (Reports of Commission to Investigate Defects in the Laws of Estates — Legis. Doc., 1930, No. 69, p. 116.) The comment or note last quoted was before the Legislature of 1929 which enacted section 18, subdivision 4, of the Decedent Estate Law, in language identical with that proposed by the Commission. We, therefore, accept it as a strong indication of the legislative intent.

The Commission's comment becomes more persuasive as a guide to interpretation when we note that the language proposed by the Commission follows closely the language of section 1161 of the Civil Practice Act, to which the note refers, and which makes provision for a separation action " for either of the following causes: * * *

" 3. The *abandonment* of the plaintiff by the defendant.

" 4. Where the wife is plaintiff, the *neglect* or *refusal* of the defendant *to provide for her.*"

As the surrogate in the proceeding before us has found that the evidence does not establish abandonment of the decedent by the appellant and that there is a failure of proof that the appellant ever refused to provide for her, we pass to the remaining question whether the surrogate was legally justified within the provisions of section 18, subdivision 4, of the Decedent Estate Law, in denying appellant's petition upon the ground that he " neglected " the decedent. In determining that question we conclude that the weight of evidence supports the surrogate's further finding that the appellant left the decedent involuntarily, at her " express request " and thereafter failed in his attempts to bring about a reconciliation.

If the decedent were living, the facts found by the surrogate would not — to borrow from the Commission's note — " be sufficient to sustain a judgment of separation under section 1161 of the Civil Practice Act." On the contrary, such findings, if made in an action for separation brought under the section last cited, would lead to a dismissal of the action on the merits. (*Mirizio* v. *Mirizio* [*No. 1*], 242 N. Y. 74, 80; *Mirizio* v. *Mirizio* [*No. 2*], 248 id. 175, 179, 181; *Bohmert* v. *Bohmert*, 241 id. 446, 452, 454; *Williams* v. *Williams*, 130 id. 193, 197; *McKee* v. *McKee*, 241 App. Div. 149; Civ. Prac. Act, § 1163. Cf. *Silberstein* v. *Silberstein*, 218 N. Y. 525.)

In the *Mirizio Case* [*No. 1*] (*supra*), which was an action for separation, the point at issue was said to be (p. 80), " whether a wife who lives apart from her husband because she is unwilling to live with him * * * can maintain an action against him for abandonment and to compel his support of her." The court ruled that (p. 80) " The wife is the one who is asserting a right and seek-

ing affirmative relief and the burden rests upon her, before she can demand benefits under the marriage contract, of showing that she is willing to discharge her obligations under it."

In the instant case the findings of the trier of the facts in effect deny decedent's willingness to discharge her marital obligations. It was she who requested the appellant to leave their home and he did so against his will. Thereafter his efforts toward a restoration of their marital life proved to be futile. That she was satisfied to be thus separated from her husband during the period of ten years, between the day he left at her request and her death, is to be inferred from her failure meantime to bring an action for separation or a proceeding to compel him to support her. It is apparent both as a matter of practical experience and from a legalistic point of view that " One is not aggrieved by a separation thus fostered and prolonged." (*Mirizio* v. *Mirizio* [*No. 2*], *supra*, p. 181.)

We do not believe the appellant was required to persist indefinitely in his entreaties toward reconciliation. It was enough if his efforts were timely and made in good faith — which may be presumed from the facts found. " If the husband has not a ' right to require his wife, even when she is in the wrong, to crawl back to him ' * * *, neither is it his duty to pay amorous court to a rebellious and unrepentent wife to induce her to return." (POUND, J., in *Bohmert* v. *Bohmert, supra*, p. 452.)

We, therefore, conclude that the condition expressed by section 18, subdivision 4, of the Decedent Estate Law that " No husband who has neglected or refused to provide for his wife, or has abandoned her, shall have the right of such an election," was an expression by the Legislature of its intent to exclude from the benefits of the statute a husband against whom a judgment of separation could be sustained under the provisions of section 1161 of the Civil Practice Act. As the findings of fact by the surrogate would not sustain a judgment of separation against the appellant and in favor of the decedent if living, it follows that they will not sustain the decree from which appeal is taken.

The findings of fact in the proceeding before us distinguish it from the cases cited by the respondents and make the rulings in those cases inapplicable to a determination of this appeal.

The conclusion of law by the surrogate that the appellant as surviving spouse is not entitled to a right of election to take a portion of his deceased wife's estate against the provisions of her will, should be disapproved; the decree from which appeal is taken should be reversed on the law, with costs, and the petition granted, with costs.

All concur. Present — Sears, P. J., Taylor, Edgcomb, Crosby and Lewis, JJ.

Decree reversed on the law, with costs, and petition granted, with costs.