Nathan- B. Sobel, ,S.
This is a proceeding to determine the right of a husband as the surviving spouse to elect against the will of his deceased wife. The parties lived together for a short three years. Prior to Mrs. Lamos’ death in 1968, the parties had lived separately and apart without any communication whatsoever for over 14 years. Yet on the present state of the law in this frequently recurring and troublesome area, this husband is entitled to one half of the net estate of his wife (EPTL 5-1.1, subd. [c], par. [1], subpar. [B]).
For on the trial it was established, by the only proof available to the executor, that the parties had probably separated by mutual consent and that Mrs. Lamos seemed neither to have desired nor looked to her husband for support. In consequence the finding must be in his favor (City Bank Farmers Trust Co. v. Miller, 163 Misc. 459, affd. 253 App. Div. 707, revd. 278 N. Y. 134; Matter of Holman, 46 Misc 2d 809; Matter of Maiden, 284 N. Y. 429).
Such obviously unjust results are frequent and commonplace in these posthumous matrimonial trials in this court.
The present statute, EPTL 5-1.2, includes among the conditions disqualifying a surviving spouse to take in intestacy or against a will:
“ (5) The spouse abandoned the deceased spouse, and such abandonment continued until the time of death.
*842 (6) A husband failed or refused to provide for his wife, unless such marital duty was resumed and continued until the death of the wife.”
These are alternate grounds. And, it will be observed that condition (5) disqualifies both a surviving husband or wife; condition (6) disqualifies only the husband.
The statute has a history. It began when the Foley 'Commission recommended and had enacted section 18 of the Decedent Estate Law (L. 1929, ch. 229) which granted to a surviving spouse a right of election. That section included the disqualifying conditions quoted above. Later, these same conditions were added to the statute governing intestate distribution (Decedent Estate Law, § 87, subds. [c], [d], as added by L. 1934, ch. 216).
In the lower court decisions which followed these enactments, there was considerable disagreement as to the statutory meaning of the terms “ abandonment ” and “failed or refused to provide ”, etc. (The original statutes used the terms ‘1 neglected or refused ”.)
This disagreement was settled by the Fourth Department in Matter of Sadowski (246 App. Div. 490 [1935], later approved by the ‘Court of Appeals in Matter of Maiden, 284 N. Y. 429, supra). The Sadowski court found indicia of intention in the Foley ‘Commission Report ‘('Commission to Investigate Defects in the Laws of Estates — Leg. Doc., 1930, No. 69, p. 116) which commented: “ Such an abandonment or refusal or neglect to provide, is intended, as our courts uphold as sufficient to sustain a judgment of separation under section 1161 of the Civil Practice Act ” (now Domestic Relations Law, § 200).
The ‘Court of Appeals in Maiden (supra, pp. 432-433) suggested the ‘ ‘ abandonment ’ ’ standards: “To constitute abandonment under this statute something more is necessary than a departure from the marital abode or a living apart. It is argued, however, that a prima facie case of abandonment is established by showing the departure from the marital home followed by the spouses living separately. To amount to abandonment the departure of a spouse from the marital home must"be unjustified and without the consent of the other spouse. The reason for leaving is inseparable from the act. Human relations between spouses are so complex and influenced by so many circumstances, separations occur in so many instances with fault and without fault, with consent and without consent that we deem the conclusion of fault on the part of the person leaving the joint home too uncertain for inference alone.”
*843 Earlier, in Matter of Barc (177 Misc. 578 [1941], affd. 266 App. Div. 677, mot. for lv. to app. den. 266 App. Div. 742) Surrogate Wingate had suggested the standards for the alternate grounds of refusal or neglect to support (p. 582): “ By way of summary on this phase of the issues, it may, therefore, be said that the elective rights of a husband against the will of his wife, or his rights of inheritance in intestacy may not be determined to be forfeited by reason of his non-support of the decedent unless it be demonstrated by his opponents, first, that he, in fact, failed to support her; second, that he possessed the means from which to furnish support; third, that the wife had not been guilty of misconduct exonerating-him from any obligation to support her; and fourth, that the wife looked to him for support or desired it from him.” (Except for “ third ” above [see Matter of Green, 155 Misc. 641, affd. 246 App. Div. 583, mot. for lv. to app. den. 270 N. Y. 675; Matter of La Penna, 16 A D 2d 655, app. dsmd. 12 N Y 2d 671], these standards have been generally approved by the decisions [see Annotation 13 ALB. 3d 448].)
As a consequence of these decisions, in determining whether there has been a forfeiture of rights, the Surrogate is required to apply, in these posthumous matrimonial actions, the same standards as would have been applied if the parties had then sought a decree of separation. These issues are, generally speaking, all of the grounds which might entitle a party to a decree of separation on the ground of abandonment (see Matter of La Penna, 16 A D 2d 655, app. dsmd. 12 N Y 2d 671, supra). Basically the issues are most frequently “ fault ”, “ consent ” and “ support ”. Such issues are difficult enough to determine between living and testifying parties. But 10, 15 and often 20 years after the events, with one of the protagonists dead and the other incompetent to testify to the “ transactions ” (CPLB 4519), this is an impossible burden. The results so demonstrate.
The problem is further complicated by the burden of proof. It is interesting to read two decisions contemporaneous with the enactment of former section 18 of the Decedent Estate Law (Matter of Sitkin, 151 Misc. 448, 457-458; Matter of Green, 155 Misc. 641, 649, affd. 246 App. Div. 583, mot. for lv. to app. den. 270 N. Y. 675, supra). Surrogate Wingate in Sithin concluded that when the personal representative of the deceased spouse establishes the marriage and the subsequent departure of the surviving spouse or failure to support by a husband survivor, the burden of producing evidence that no forfeiture resulted shifts to that survivor. Surrogate Delehanty in Green held *844 that the burden of proof to establish forfeiture rests upon the party alleging same, usually the personal representative. Each had sympathetic facts to support their respective viewpoints. A few years later the Court of Appeals (Matter of Rechtschaffen, 278 N. Y. 336, 338 [1938] without discussion held “ The burden is upon him [the party alleging forfeiture] to establish these allegations ”. None of the subsequent decisions has fully discussed the serious problem of burden of proof (Matter of Maiden, 284 N. Y. 429, supra; Matter of Rose, 15 A D 2d 983; Matter of Barc, 177 Misc. 578, affd. 266 App. Div. 677, mot. for lv. to app. den. 266 App. Div. 742, supra).
As already noted, these disputes recur with great frequency and in other contexts, e.g., right to letters, distribution of proceeds of wrongful death actions as well as in cases involving the right of election and intestate distribution. Because of the paucity of available and competent evidence to establish the essentials of forfeiture by the surviving spouse, the burden of proof becomes the controlling factor. So it was in the instant case. Despite the proof of short cohabitation — and long separation without support — the witnesses called to establish forfeiture failed to do so. If the burden of persuasion had shifted to the husband he would have been unable to establish ‘ ‘ no forfeiture ”.
The point is that the results are unjust and often even unconscionable. An empirical examination of the facts in the reported cases discloses instances where the departing spouse was successful after separation for periods of over 20 and 25 years.
The appellate courts seem never to have considered the practical problems resulting from placing the burden of proof on the deceased’s representative (cf. EPTL 5-4.2 [burden of proof of contributory negligence]). There is something to be said for the suggestion of Judge Wingate (supra), that the burden of persuasion to show no forfeiture might shift after prima facie proof of abandonment or no support. Perhaps what is needed is a statutory presumption which would have the effect of shifting the burden of proof after separation without support for a period of five years.
As already noted, the decree shall provide that the decedent’s surviving spouse is entitled to elect against her will. Under ■such circumstances, he is entitled to an accounting.